First case this afternoon is People v. Mourning. That's case number 414-0270 for the appellate of Alan Andrews for the appellate David Manchin. Mr. Andrews, you may proceed. May it please the court, Mr. Manchin. I represent Mr. Mourning. He's convicted of two counts of predatory criminal sexual assault of a child and sentenced to a total of 17 years in prison. Mr. Mourning is the complainant's older brother, much older brother, 15 years older. This is another case where the allegations of a sexual assault were not made until many, many years after the alleged assaults occurred, in this case about 10 years after. These cases present great difficulties for defendants when it comes to mounting a defense. Other than Mr. Mourning testifying on his own behalf and denying all the allegations, it's pretty much impossible to do anything else. Thus, because of the age of the allegations, this case became a pure credibility battle between the complainant and Mr. Mourning. The complainant raised these allegations when she was 15 years old. At trial she testified that she lived with Mr. Mourning from the time she was born until sometime between the age of 5 and 9. She testified that when she was 5 or 6 years old, she'd gone swimming in the pool and had come in and used the bathroom and Mr. Mourning had come in with her and put his finger in her vagina. She further testified that at some point at the same age she was going to bed, she was in her bed in her pajamas and Mr. Mourning came into her bedroom and did the same thing. As I mentioned, Mr. Mourning took the stand, testified on his own behalf and denied all those allegations. To bolster the complainant's credibility in this case, the State improperly elicited testimony that Mr. Mourning could not explain why the complainant would lie about these allegations. First, the State had Detective Thompson testify. Detective Thompson interviewed Mr. Mourning after these allegations came to light and under examination by the State, he testified that Mr. Mourning had been unable to provide him with a reason why the complainant would lie. Then, when the prosecutor was cross-examining Mr. Mourning, she asked him if the complainant lied and Mr. Mourning said yes. She asked him why, Mr. Mourning said he didn't know. She asked him, you're saying that she's lying and Mr. Mourning again responded yes. The prosecutor again asked why and Mr. Mourning again said he didn't know. The prosecutor asked him, can you think of any reason why she would lie and Mr. Mourning offered perhaps somebody put her up to it. The prosecutor asked who and Mr. Mourning had to admit that he didn't know who would have done that. During the State's closing argument, the prosecutor argued to the jury. When the defendant was asked why would she make it up, he said I don't know. He went on to say maybe somebody put her up to it. That's the best he can come up with. Well, who put her up to it? He said I don't know. What this comes down to is who do you believe? This claim, as the State argues, is defaulted. There was no objection to this testimony. It's not in the post-trial motion, but I'm asking this court to review it under the prong of the plain error rule that's reserved for cases where the evidence is close. The first thing this court would do in reviewing for plain error would be to determine whether any error actually occurred. For a number of reasons, it was improper for the State to present this evidence. First of all, the defendant's, Mr. Mourning's opinion of the complainant's credibility is simply irrelevant. The appellate courts have explained it really doesn't show whether or not he committed the acts. Secondly, appellate courts have held that it improperly intrudes on the function of the jury as a trier of the fact, the jury to determine who's lying. Appellate courts have also commented that it demeans and ridicules the defendant. I wouldn't say it went so far as ridiculing Mr. Mourning in this case, but I think you could look at the closing argument by the State, the remark, that's the best he can come up with, as being somewhat demeaning. Where the evidence is close and the credibility, now courts, I haven't found a case where this is a plain error, but the courts have analyzed this for harmless error, and they have held that when the evidence is close and the case turns on the credibility of the witness, the error is not harmless. And that's, I think, applicable here. This is a close case, it turns on the credibility of Mr. Mourning and the complainant, and this court should find that. What if the questioning had been in a different fashion, as opposed to say, do you know any reason why she would lie? But just ask the defendant, or let's assume the police did their interview, do you know any reason why she would make up a story like this? Well, first, I don't think there's any problem with the police asking him whatever they want, as long as it's not brought in as testimony. Well, assuming it's then brought in as testimony. The jury hears it and he says, no, I can't think of it. I think that it's improper, it's not relevant, whether or not he can come up with a reason. This is different from a case we recently had, for instance, where we had a police officer volunteer. You might recall it, the Brothers case, that, yeah, I took a statement from the rape victim, she was very credible, very believable. Just volunteering that out of nowhere when there was no real issue as to that in any event, and this court condemned it. But it seems to me that when you're talking about relevancy, there might be a different aspect to it. It might be relevant if he knew a reason why she would lie, but the fact that he doesn't know a reason doesn't seem to me to have any relevance. I don't see why, you know, he should be able to, I mean, you have no idea what might have gone on behind the scenes, and he can't be expected to know that. There's no real reason to expect a defendant to know why he would be being framed. It might be a very complicated reason. I just, I don't see where the absence of the knowledge has any relevance at all. You raise an issue in this case that there was an inadequate crinkle hearing conducted. Indeed. If we were to agree with you, would, should this court do anything more than just essentially saying, we agree with you on why and send it back for a crinkle hearing as opposed to addressing any of the other arguments on the merits? I think that this court should grant a new trial, because it's evident that the trial was not fair, and it would just be more efficient to send the case back for the new trial, you know, if you feel this is a reversible error, and obviate the need for the crinkle hearing. Well, so your position is we shouldn't send it back for a crinkle hearing? My position is you should send it back for a crinkle hearing if you don't send it back for a new trial. If you determine that the trial was accurate, which I'm claiming it is not, then the crinkle hearing would become necessary to determine whether counsel was ineffective. If this court finds that Mr. Mourning's entitled to a new trial, there's no reason at all to have the crinkle hearing, because whatever counsel's deficiencies were in this trial wouldn't matter anymore. Not only was the evidence close in this case, you know, Mr. Mourning didn't confess, he denied all the allegations, but the error went directly to the jury's ability to fairly evaluate who was telling the truth. The State's point in raising this evidence and eliciting it and making its argument is that if Mr. Mourning can't explain why the complainant's lying, she must be telling the truth. That puts the defendant in a bad spot. It's not very logical, but it has a surface appeal. The implication of the closing argument, that's the best he can do. That implies that if Mr. Mourning can't explain who put her up to it or explain why she's lying, then he's guilty. So what the arguments do is excuse the ability, they don't know these arguments are improper, excuse the ability of the jury to evaluate the complainant's credibility accurately. They think that the defendant has to be able to explain why the complainant is lying, which simply isn't the case. And because there was a significant delay in the trials, Mr. Mourning was already hamstrung in his defense. When the trial is 12 or 13 years after the event supposedly occurred, it's not possible to present an alibi. It's not possible that there's going to be any DNA because there weren't even any allegations of a crime until 10 years after the act supposedly occurred. There's not going to be any possibility of a physical examination or anything else that would shed light on it. I imagine, I've never been a prosecutor, I imagine they don't like these cases where it's uncorroborated and stale allegations. But I think if you had to choose between being an innocent defendant in a case like this or the prosecutor in a case like this, you choose to be the prosecutor 100% of the time. And I think it's important that Mr. Mourning get a fair trial in a case like this where it's so hard to defend. I'd like to discuss the second argument briefly because it also bears on the jury's ability to evaluate the credibility of the complainant fairly. At trial, the prosecutor asked the complainant and Mr. Mourning's mother, did the complainant tell you something then that had happened to her? And the mother testified yes. This testimony was irrelevant. The trial court ruled that it was relevant because it explained why there was such a delay in the reporting the alleged offenses. But it doesn't explain why there was a delay in the allegations at all. It has no bearing on it. She didn't explain why. But the problem is that it improperly bolstered the complainant's credibility because the jury would have inferred that she'd made this prior consistent statement that she told her mother what had happened. And that's more true because the mother didn't just testify like properly, you should say, I talked to the complainant and then we went to the police. She testified the complainant told me something had happened. Appellate courts have noted that prior consistent statements unfairly enhance a witness's credibility because a jury is more apt to believe something that is repeated. This wasn't a prior consistent statement. She didn't say what she said. She just said she talked to her. She said that the complainant told her something that had happened to her, which strongly implies that she'd made a prior consistent statement. Technically, it would be proper to say I talked to her and then we went to the police. But even that limited thing wouldn't be proper here because it's totally irrelevant because the fact that she talked to her and went to the police had no relevance to any issue at that trial. It didn't explain why there was a delay. It simply explained why they went to the police. And the jury would know that every criminal trial starts with a criminal complaint somewhere, so it didn't add anything useful to the juror's pool of knowledge. All it did was let the jurors know that the complainant had told her mother that something had happened and probably what had happened, which bolstered her credibility. So, again, as I explained before, the trial is unfair. This is a very difficult case to defend against. Mr. Mourning is requesting that this court remand the cause for a new trial. I hadn't planned on discussing Issue 3, the Krankel issue, but I would be willing to answer any questions that the court might have on that issue. I did have one question. As I understood the facts, the issue was raised as ineffective assistance of counsel. The case was continued one week, and then a week later, didn't your client say that he wanted to stay with Mr. Fuller as his attorney? Isn't that the same thing as indicating that your client was no longer asserting ineffective assistance? I can't remember if it was actually continued for a week or if he was given the opportunity for a continuance for a week, but I'll explain why I don't think it matters. Mr. Mourning said he was dissatisfied with his attorney, and the trial court immediately announced he wouldn't be appointing any lawyer at public expense. Mr. Fuller then told the court that he thought it surprised Mr. Mourning that he wouldn't be eligible to have appointed counsel. Mr. Fuller also told the court that Mr. Mourning had no money to hire an attorney. So offering Mr. Mourning a week, whether he accepted it or not, doesn't matter because there was no way he could do it. So he stayed with Mr. Fuller because he was stuck with him, not because he was withdrawing his allegations. The court had told him he can't have appointed counsel, he can't afford counsel. When they came back, if it was a week later, I think it was, did your client say, I want to stay with or retain Mr. Fuller, or was this just something that the court concluded because your client said he couldn't afford an attorney? I honestly don't remember when he did that. And you don't think it matters? He had no choice other than to go pro se, so he has no choice. It wasn't a chance to take Fuller off the case. I maintain that however it happened. Because he had no chance to have another lawyer, it didn't matter that he wanted to go with Fuller because it was a Hobson choice. Okay. Thank you very much. Thank you. You'll have rebuttal. Mr. Manchin. Good afternoon, Your Honors. Counsel. In this case, the defendant received at their trial the two allegations that he raises regarding the handling of the trial, the cross-examination of the defendant and the victim's mother's testimony that she was told that something happened. Trial court rulings in those respects were correct. I think that this is a case where this court should just reject the defendant's plain error or that you should set aside the waiver. This is the type of error that had an objection been made. It could have been clearly corrected if there was such an error. And the defendant is just simply being asked to excuse his forfeited act in the trial court by trying to bring it under the limit exception for plain error. And I don't believe that plain error applies because there was no error. With respect to the cross-examination of the defendant, in People v. Innis, the Supreme Court upheld the exact same type of cross-examination that took place here. It said that it was proper for the defendant to be asked, do you know why the victim would falsely accuse you? Because that was a matter within the defendant's personal knowledge. That is exactly what was done here. The cross-examination was in terms of the prosecutor is cross-examining the defendant regarding his statement to the police in which he told the police, I don't know why she falsely accused me. There was never an objection to the defendant's statement to the police as to not having a reason to, no clue as to why she would falsely accuse. There was no objection in the defendant's brief or reply brief to that testimony. The only claim raised by the defendant until oral argument this morning was that the defendant should not have been asked, do you know why she would have lied? So this is the first time on oral argument that they're complaining about the defendant's statement to the police that I don't know why she would falsely accuse me. So I don't know how that, so to the extent the defendant is challenging the statement to the police and impropriety of the police officer asking him, do you know why she would lie, that has completely been waived because it's being raised for the first time here on oral argument. There's never any objection below as to the statement to the police. The context in which the defendant was cross-examined regarding why the victim would lie was in the context of his statement to the police. And it was in context of the defendant's testimony that he had a good relationship with the victim and that it was a normal brother-sister type relationship. So this question, why would she, do you know why she would lie, is clearly relevant as to part of the defendant's knowledge. And it's a question that under Innis was properly asked. And in view of the fact that the defendant's lack of knowledge as to why she would lie was already before the jury without objection in the form of his statement to the police would tend to make the cross-examination at most cumulative of evidence already before the jury. So the prejudice the defendant suggests is simply not there. With respect to the testimony as to why the victim told the mother something happened, prior to trial a hearing was held on the motion in limine regarding the victim's prior statements. The trial court ruled that the victim could be asked why there was no initial report, when she made the report, what were the circumstances prompting the report. The trial court further ruled that the people that the victim spoke to could be asked when a report was made by the victim, what was the victim's demeanor, but that the contents of the reports would not be admitted. The testimony from Marianne Mourning was within the trial court's rulings regarding the victim's prior statements. There was no prior consistent statement. There was just simply something happened. That is not hearsay. It is not a prior consistent statement to bolster credibility. It is the state police and the state has the right to explain how they became involved in the case and why the police would be arresting the defendant and why the defendant would be at question in this matter. The jury is not supposed to be left in limbo that all of a sudden the defendant was at the police station being questioned by the police. The steps leading up to that point can be established, and that is simply what was done here. The statement, something happened, does not refer to the defendant, does not refer to what that something happened was, does not amount to a repetition of the statement that I was fond of by the trial court's ruling that this testimony would be admissible, and his post-trial ruling saying that the state had adhered to his ruling in the motion to eliminate was correct. What about the Krenkel matter? Well, I question whether the defendant was even entitled to a Krenkel hearing. Under Pecoraro and the cases that follow it, when the defendant has retained attorney, the trial court is not required to engage in any kind of post-trial Krenkel hearing. Well, how about when he says he needs appointed counsel, and that's what the defendant and his counsel tells the court post-conviction, says, hey, he's got no money left. This pretrial complaint, I don't know how this pre- It was post-trial. It was convicted. I don't recall the situation in which the It's prior to sentencing. But I still think that even under that situation, the defendant is trying to get appointed counsel, does not change the Pecoraro rule that when the defendant has retained counsel, the trial court's not required to inquire. Even if he can't continue with retained counsel, isn't that essentially now in a situation where he's got, as if he had a PD all along? I think that the trial court was not required to inquire, but if he was required, what he did here was correct. The trial court is not required in every circumstance to question the defendant or his attorney regarding the allegations. As the Buchanan case states, there are three ways the trial court can make a determination as to Crankle, whether there is a need for further inquiry. One, he can ask the defendant. One, he can ask the counsel. Three, he can look to the basis on his knowledge of the case and the nature of the defendant's allegations. And under People v. Jolly, it's decided by the Supreme Court, where the defendant's allegations go to matters of judgment or strategy, the trial court can refuse to go any further just on that basis. In this case, the trial court read the defendant's letter complaining about the allegations of what his attorney did or did not do. It said this all goes to matters of judgment or strategy. Well, here's the problem I have with that, counsel. The problem is that as someone who conducted Crankle hearings before they were known by that name 30 years ago when I was a trial judge, it doesn't take much, and it shouldn't take much, for a trial judge at this hearing to turn to the defendant and say, essentially, what's your beef? That never happened here. And I just heard from the lawyer based upon the letter, and it just strikes me that for the 48 seconds it would have taken to give the defendant an opportunity to expand in whatever it was he was going to say, I think that's what the trial judge should do. It might be something that the court should do, but it's not something that the trial court is required to do. The case law says that the trial court has discretion on how to proceed, that he may question the defendant, he may question the state's attorney, or he may decide upon the face of the defendant's allegations in the nature of the case. In this case, the trial court relied upon his knowledge of the case, and the defendant's... Well, I thought he made it pretty clear that the state's attorney should have no role in this. And the state's attorney did not have any role as far as to... Your argument that the court can rely on the state's attorney, I think, would be inconsistent with that position. If I said state's attorney, I misspoke. I meant his knowledge of the case, not the state's attorney. I'm not suggesting in any shape or form that the state's attorney has any role at this stage of the proceedings. It's strictly between the trial court, and it's only when, after counsel is appointed, if counsel is appointed, that the state's attorney becomes involved to argue whether or not the... There's any ineffective assistance counsel. If I misspoke, I apologize. I think that this is a case where the defendant's letter clearly sets out what his beef was, as you put it. And the beef is that the defendant disagreed with how his attorney wanted to present the case and what witnesses the attorney wanted to call. That's just a matter of a disagreement as a judgment strategy, and that's just simply not enough to require a further hearing. Okay. Thank you. Are there no further questions? Thank you very much. Mr. Andrews, do you have any rebuttal? Yes, I do. First, you're absolutely correct that he did get a week off, and he came back, and Mr. Fuller said, the family wants me to continue. But I maintain my position that since he had no other alternative other than to go pro se or have Mr. Fuller represent him, that... No, he's given a third choice. The judge said, or you can hire another private lawyer. Yes, that's true, but I'm believing Mr. Fuller's representations that he had no money to do so. As for the state's arguments, Detective Thompson's testimony is certainly my position that that's improper. That's why the first thing that was in that argument was his testimony. It's improper for the same reason as cross-examining the defendant is. If you can't cross-examine a defendant about why the complainant's lying, you can't have somebody else come in and start testifying. Doesn't this put Mr. Manchin at a disadvantage if you're raising him for the first time in an oral argument? It would. But my position is that I didn't raise it for the first time, that that's why it's in there in the brief at the very beginning of the argument, the first thing. The brief focuses on the cross-examination and the closing argument because that's plainly the most prejudicial evidence. In your reply brief, you seem to be distinguishing Enos, which Mr. Manchin relied on in his brief. You make reference to it, and then you state that the Supreme Court's statement that the initial questions were likely proper is difficult to square with the decision that Enos cited, People v. Turner. That suggests to me that you're implicitly arguing the Supreme Court was wrong in Enos, which is a somewhat difficult position for this Court to adopt. This Court could follow Turner, which has a very clear rule that you cannot ask these questions unless the defendant's testimony or his version of events conflicts with overwhelming evidence. Well, but the Supreme Court did cite Turner and apparently found that interpretation not compelling. Well, Turner's also distinguishing. I'm reminded of when I was in your position arguing a case in front of the Appellate Court 40 years ago. I think it was Justice Smith who responded to, I think it was my opponent's position at the time, that, well, the Supreme Court decision cited by the other side was just wrong. You mentioned that that would have to be a carefully written decision by this Court, explaining how that works. That's true, and my suggestion would be to follow Turner's statement. But I won't tell you how to write your decision. But it's also distinguishable, because Enos said you can ask one question, and then you stop when he says no, and that's not what happened here. And Enos never approved of any closing argument like the one here, where the prosecutor said that because he can't answer the questions, that shows that, you know, that's the best he can come up with, the implication that he's guilty because of that. So Enos is also distinguishable. Thank you. Thank you, Mr. Andrews and Mr. Manchin. The case is submitted. The Court stands at recess.